UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
JERRICK ALLISON,                              NOT FOR PUBLICATION

                  Petitioner,                 **MEMORANDUM & ORDER**

      -against-                               10-cv-3453(KAM)

SUPERINTENDENT KHAHAIFA,
Superintendent of Orleans
Correctional Facility,

                  Respondent.
-----------------------------------X
**MATSUMOTO, United States District Judge:**

            Jerrick Allison ("petitioner"), proceeding *pro se*,

filed a petition for a writ of habeas corpus pursuant 28 U.S.C.

§ 2254, seeking to vacate his state court conviction and

sentence.  For the foregoing reasons, Allison's petition is

denied.

<u>**BACKGROUND**</u>

            On July 27, 2004, petitioner entered Apple Bank in

Queens, New York, and gave the teller a withdrawal ticket, which

stated that petitioner had a gun and demanded money.  (05/31/07

Tr.[1] at 218-20.)  The teller gave $2,000 to petitioner, who then

proceeded to leave the bank.  (<u>Id.</u> at 220, 222.)  On August 28,

2004, petitioner entered Fleet Bank in Queens, New York, and

gave the teller a withdrawal slip demanding money and

threatening to use a weapon.  (06/04/07 Tr. at 247, 250.)  The

---
[1] Citations to the minutes of the trial are indicated by date and the
abbreviation "Tr."

teller gave petitioner $1,150, and petitioner left the bank.
(Id. at 259.)  On September 8, 2004, petitioner entered Astoria
Federal Bank in Queens, New York, and gave the teller a note
demanding money and threatening physical harm.  (Id. at 283,
285-86.)  The bank teller told her supervisor that she was being
robbed, and petitioner fled the bank without taking any money.
(Id. at 286-87.)

Petitioner was arrested on September 8, 2004, and the
People of the State of New York filed a felony complaint against
him on September 9, 2004.  (See ECF No. 8-1, Ex. A, Brief for
Defendant-Appellant ("Pet'r App. Div. Br.") at 16; ECF No. 8-1,
Ex. B, Brief for Respondent ("Resp't App. Div. Br.") at 2.)  One
of the bank tellers identified petitioner in a lineup, (06/04/07
Tr. at 294), and petitioner confessed to police that he had
committed the aforementioned two robberies and one attempted
robbery, (see 06/05/07 Tr. at 323-25).  Petitioner was charged
with Robbery in the First Degree, N.Y. Penal Law § 150.15(4),
Robbery in the Third Degree, N.Y. Penal Law § 160.05, and
Attempted Robbery in the Third Degree, N.Y. Penal Law §§ 110.00,
160.05.  (Resp't App. Div. Br. at 2.)

On June 24, 2005, the People filed an indictment and
Notice of Readiness pursuant to New York Criminal Procedure Law

2

("C.P.L.") § 30.30. (Pet'r App. Div. Br. at 4.)[2] On both

January 29, 2007, and April 27, 2007, petitioner moved to

dismiss the action against him on speedy trial grounds pursuant

to C.P.L. § 30.30. (Id. at 4-5.) Both of these motions were

denied. (Id. at 5.)

Jury selection and trial in petitioner's case began on

May 29, 2007. (05/29/07 Tr.) After some preliminaries,

petitioner's counsel, Andrew Worgan ("Worgan"), informed the

court that petitioner wanted his cousin, "Tameeca Allison," to

be substituted as his counsel. (Id. at 13.) The court denied

petitioner's request, noting that the court was ready to

proceed, the jury was outside, and petitioner's request could

have been made a week earlier. (Id.) Petitioner then stated to

the court that he did not want Worgan to represent him, and the

court again denied petitioner's request for new counsel, stating

that it had already heard "a whole bunch of applications."[3] (Id.

at 13-14.) The court admonished petitioner against speaking out

and warned that if he continued to speak out, petitioner would

---

[2] Respondent's Appellate Division Brief states that the indictment was filed
on June 20, 2005. (Resp't App. Div. Br. at 5.)

[3] Prior to trial, petitioner moved for reassignment of counsel, arguing that
counsel had failed, among other things, to conduct a proper investigation and
communicate with petitioner. (Pet'r App. Div. Br. at 21.) The court denied
this earlier motion on the ground that it had already granted petitioner two
prior motions for new counsel and because petitioner had not established good
cause. (Id.)

be removed from the courtroom and would be unable to assist in his own defense.  (<u>Id.</u> at 14-15.)

Petitioner again stated that he did not want Worgan to represent him, explaining that he did not feel that Worgan would "really fight and stand up for me."  (<u>Id.</u> at 16.)  The court told petitioner that Worgan had "considerable experience inside the criminal law" and had done "an excellent job" in the past. (<u>Id.</u>)  The court further stated that Worgan had represented petitioner throughout, and if petitioner no longer wanted Worgan as his attorney, he would have to represent himself.  (<u>Id.</u>) Petitioner responded that he wished to represent himself, and the court responded that doing so was "a mistake also."  (<u>Id.</u> at 16-17.)  The court, however, inquired as to petitioner's age and occupation in order to determine whether petitioner was competent to proceed *pro se*, and petitioner informed the court that he was fifty years old, had previously worked as a residential counselor and a social worker, volunteered with little league baseball, worked as a foreman at a recycling plant, and worked as a counselor with the bureau of criminal justice.  (<u>Id.</u> at 17-18.)

The court again asked petitioner whether he was asking to proceed without the benefit of an attorney, and petitioner answered no, stating that he was asking to proceed without Worgan as his counsel.  (<u>Id.</u> at 18.)  The court told petitioner

that, "beyond the 11th hour to say I want a new attorney,
doesn't work out." (Id.) The court then stated that it would
not grant petitioner's request unless petitioner had another
attorney "ready, willing and able" to begin trial immediately.
(Id. at 19.) Petitioner again expressed dissatisfaction with
Worgan, stating that he wanted an attorney who "w[ould]
represent [him] to make sure [he] ha[d] a fair shot" at trial.
(Id. at 20.)

The court gave petitioner the option of proceeding
with Worgan as his counsel or representing himself, warning that
petitioner did not appear to be in a position to try the case
himself. (Id. at 20-21.) Petitioner agreed that he was not in
a position to proceed without counsel and requested an
adjournment so that he could retain new counsel. (Id. at 21.)
The court denied the request for an adjournment, noting that
petitioner's case had been on the calendar since 2005 and there
was "no legal reason" for an adjournment. (Id. at 22.) The
court reiterated that if petitioner had another attorney
"sitting next to [him] . . . ready to represent [him],"
petitioner could go ahead with that attorney, but no such
attorney was present. (Id. at 23.)

Petitioner then requested to be taken to the holding
cells in the back of the courthouse. (Id. at 23-24.) The court
informed petitioner that, if the trial were to proceed in his

5

absence, he would be unable to assist in his own defense.  (Id. at 24.)  Petitioner insisted on being removed from the courtroom, and his request was granted.  (Id. at 25.)  After a short recess, the court instructed Worgan that, during every recess, he should ask petitioner whether he would like to return to the courtroom.  (Id.)  The court proceeded with jury selection in petitioner's absence.  (Id. at 28.)

At the start of the second day of trial, on May 30, 2007, Worgan again informed the court that petitioner refused to attend the trial.  (05/30/07 Tr. at 135-36.)  The court and Worgan both noted that their respective research had found that no attorney by the name of "Tameeca Allison" was licensed to practice in the State of New York.  (Id. at 136-37.)  Jury selection continued in petitioner's absence.  (Id. at 137.)

The next day, on May 31, 2007, petitioner returned to the courtroom, complaining that he had been denied equal protection under the law.  (05/31/07 Tr. at 204-05.)  Petitioner continued to demand a new attorney or an adjournment to obtain new counsel, and the court reiterated that the motion for reassignment of counsel would be granted only if petitioner had "a lawyer ready, willing and able to proceed with trial."  (Id. at 206.)  The court stated that petitioner had been "given every opportunity" to find another attorney, noting that his "case ha[d] been ready for the longest time."  (Id. at 206-07.)  Upon

6

further inquiry, petitioner admitted that he found his requested attorney's name, "Tameeca Allison," out of a lawyers directory and that he did not know the location of her office. (Id. at 208.) Petitioner still maintained, however, that he did not want Worgan to represent him. (Id.) The court gave petitioner the choice between continuing with Worgan as his counsel or proceeding *pro se*. (Id.) Petitioner stated that he wished to represent himself. (Id.)

At that time, the court noted that it must first "deal with certain legalities" before allowing petitioner to proceed *pro se*. (Id. at 209). The court counseled petitioner against self-representation, and again inquired as to petitioner's age and occupation. (Id.) When asked why he wished to proceed *pro se*, petitioner responded that he did not feel Worgan would "represent [him] to the best of his ability." (Id. at 210.) Petitioner also stated: "[Worgan] hasn't shown me that he is with me. He has shown me otherwise, that he's with the district attorney's office." (Id.) Petitioner complained that Worgan failed to return his mother's calls and did not respond to his letters, the most recent of which was sent on April 18, 2007. (Id.) Petitioner acknowledged that he was able to see Worgan in court on May 14, 2007, but petitioner complained that Worgan failed to visit him in jail or devise a trial strategy with him. (Id. at 210-11.) Petitioner further indicated that Worgan

7

failed to visit petitioner while he was in the courthouse holding cells, despite his explicit requests. (Id.)

The court warned petitioner of the seriousness of the charges and of the fact that petitioner was facing a potential life sentence if he was convicted and found to be a persistent violent felony offender. (Id. at 212.) Petitioner responded that he understood the seriousness of the charges and what was at stake at the trial. (Id.) Further, although acknowledging that he was not in a better position to try his case than an experienced criminal defense attorney, petitioner insisted that he was not confident that Worgan would represent him to the best of his ability. (Id. at 212-13.) The court informed petitioner that Worgan was familiar with the rules of evidence and other applicable rules, but petitioner insisted that Worgan had not "shown [him] in any human way and as far as human relation goes that he would represent [him] to the best of his ability." (Id. at 213.)

The court again indicated that it would not appoint new counsel for petitioner, that the trial would be conducted in accordance with the rules of evidence, and that the court could not help petitioner ask questions or make objections. (Id. at 213-15.) The court further warned petitioner that "there are many procedures and rules which may be confusing to someone who has not had any legal training." (Id. at 215.) The court asked

whether petitioner understood, and petitioner replied, "Yes, I do." (Id.) The court confirmed that petitioner still wanted to proceed without the benefit of an attorney, and petitioner responded, "Yes, I will." (Id.) The court advised petitioner that Worgan would remain in the courtroom to assist petitioner if needed. (Id. at 221.) Petitioner gave an opening statement and cross-examined one witness before permitting Worgan to resume representation. (See 06/04/07 Tr. at 243.)

On June 5, 2007, a jury acquitted petitioner of first degree robbery but convicted him of two counts of third degree robbery and one count of attempted third degree robbery. (06/05/07 Tr. at 413.)[4] On July 11, 2007, petitioner was sentenced to an indeterminate prison term of three-and-a-half to seven years on the two counts of third degree robbery[5] and two to four years on the attempted third degree robbery count, with the

---

[4] Petitioner originally pled guilty to the crimes for which the jury convicted him. However, petitioner withdrew his guilty plea when it was later determined that petitioner could not plead down from first-degree robbery to third-degree robbery. (Pet'r App. Div. Br. at 29.)

[5] The trial transcript indicates that petitioner received a sentence of "no less than three-and-a-half years and five years" on the first of the two third degree robbery counts. (S. Tr. at 14 (emphasis added).) This appears to be an error, however, because all of the parties' briefs filed with respect to this case, including petitioner's brief to the Appellate Division and his habeas petition to this court, state that petitioner received three-and-a-half to seven year sentences for each of his third degree robbery convictions, for a total sentence of nine to eighteen years on the three counts of conviction. (See, e.g., Pet'r App. Div. Br. at 13; Pet. at 6.)

sentences running consecutively, for a total of nine to eighteen years imprisonment. (S. Tr.[6] at 14.)

Petitioner appealed his conviction to the Appellate Division, Second Department, on the grounds that (1) the People were not ready for trial as required by C.P.L. § 30.30; (2) the trial court violated his Sixth Amendment right to counsel by failing to adequately inquire into the reasons for his dissatisfaction with counsel, by refusing his request for reassignment of counsel or, alternatively, an adjournment to obtain new counsel, and by improperly permitting petitioner to represent himself; and (3) the sentence imposed by the trial court was excessive. (See Pet'r App. Div. Br.)

On January 12, 2010, the Appellate Division unanimously affirmed petitioner's judgment of conviction and sentence. See People v. Allison, 892 N.Y.S.2d 516 (N.Y. App. Div. 2010). The Appellate Division found that (1) petitioner failed to preserve for appellate review his speedy trial claim under C.P.L. § 30.30; (2) the trial court properly inquired into the reasons for petitioner's dissatisfaction with counsel, the trial court properly refused petitioner's request for new counsel or an adjournment, and the trial court did not err in permitting petitioner to represent himself during part of the

---

[6] Citations to the minutes of the sentencing proceedings are indicated by the abbreviation "S. Tr."

trial; and (3) the sentence imposed was not excessive.  See id.
at 517-18.  On May 11, 2010, the New York Court of Appeals
denied petitioner's application for leave to appeal.  See People
v. Allison, 14 N.Y.3d 885 (2010).

On July 26, 2010, petitioner filed the instant *pro se*
petition for a writ of habeas corpus pursuant to 28 U.S.C.
§ 2254.  (See ECF No. 1, Petition for Writ of Habeas Corpus,
dated 07/26/10 ("Pet.").)  Petitioner raises the following
claims in his habeas petition:[7] (1) that his two motions to
dismiss pursuant to C.P.L. § 30.30 were improperly denied;
(2) that the trial court failed to protect petitioner's right to
counsel by refusing to appoint new counsel for petitioner at the
beginning of the trial, by refusing to adjourn the trial so that
petitioner could obtain new counsel, and by improperly
permitting petitioner to represent himself; and (3) that the
sentence of nine to eighteen years imprisonment was harsh and
excessive in light of petitioner's age,[8] history of drug
addiction, and the fact that no weapon was used and no one was

_____

[7] "[S]ubmissions of a *pro se* litigant must be construed liberally and
interpreted 'to raise the strongest arguments that they suggest.'"  Triestman
v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis
omitted) (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)).  The
court, therefore, interprets petitioner's claims to raise the strongest
arguments they suggest.

[8] Petitioner was born on March 23, 1957 and was fifty years old at the time of
trial.  (05/31/07 Tr. at 209.)

11

physically injured during petitioner's robberies and attempted robbery.  (See id. at 5-6.)

Respondent filed an opposition to the petition.  (See ECF No. 7, Memorandum in Opposition to Habeas Petition, dated 11/09/10 ("Resp't Opp'n").)  Respondent argues that petitioner is not entitled to habeas relief for the following reasons: (1) petitioner's C.P.L. § 30.30 claim is not cognizable on federal habeas review because it "concerns a matter of pure state law," and, moreover, any Sixth Amendment speedy trial claim is unexhausted and procedurally barred by an adequate and independent state law ground, (Resp't Opp'n at 11, 15, 20); (2) the Appellate Division properly affirmed the trial court's inquiry into and denial of petitioner's application for reassignment of counsel or an adjournment to obtain new counsel, and the Appellate Division properly affirmed the trial court's decision to permit petitioner to represent himself at trial, (id. at 28-33); and (3) petitioner's excessive sentence claim does not present a federal question for review and, moreover, any Eighth Amendment claim is unexhausted, (id. at 12, 34-36).

## DISCUSSION

## I. Applicable Law

### A. Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may only grant habeas

relief with respect to a federal claim adjudicated on the merits in state court where the adjudication of the claim resulted in a decision that was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court decision will be 'contrary to' . . . clearly established precedent [of the Supreme Court of the United States] if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases,' or 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent.'  A state court decision will be an 'unreasonable application of' . . . clearly established [Supreme Court] precedent if it 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'" Penry v. Johnson, 532 U.S. 782, 792 (2001) (quoting Williams v. Taylor, 529 U.S. 362, 407-08, 405-06 (2000)).

B.  Exhaustion

The AEDPA requires that, in order to be eligible for habeas relief, a petitioner must have "exhausted the remedies

available in the courts of the State."  28 U.S.C.

§ 2254(b)(1)(A).  "The exhaustion requirement is not satisfied

unless the federal claim has been fairly presented to the state

courts.  In order to have fairly presented his federal claim to

the state courts the petitioner must have informed the state

court of both the factual and the legal premises of the claim he

asserts."  Daye v. Attorney General of State of N.Y., 696 F.2d

186, 191 (2d Cir. 1982) (en banc) (internal quotation marks and

citations omitted).

A petitioner is not required to cite "book and verse

on the federal constitution" in order for a claim to be "fairly

presented."  Picard v. Connor, 404 U.S. 270, 278, 275 (1971)

(quotation marks and citation omitted); see also Daye, 696 F.2d

at 192.  Instead, exhaustion may be satisfied where the legal

basis of a claim made in state court is the "substantial

equivalent" of the habeas claim.  See Picard, 404 U.S. at 278;

Daye, 696 F.2d at 192.  "This means, in essence, that in state

court the nature or presentation of the claim must have been

likely to alert the court to the claim's federal nature."  Daye,

696 F.2d at 192.  Even without citing "book and verse" of the

United States Constitution, a petitioner may fairly present his

federal claim to the state court through "(a) reliance on

pertinent federal cases employing constitutional analysis, (b)

reliance on state cases employing constitutional analysis in

like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Daye, 696 F.2d at 194; see also Ramirez v. Attorney Gen. of the State of N.Y., 280 F.3d 87, 95 (2d Cir. 2001).

Moreover, where the exhaustion requirement outlined above is not satisfied, but the requisite state court would find petitioner's claim to be procedurally barred, a federal habeas court must deem the claim to be exhausted but procedurally defaulted. Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263 n.9 (1989)). Once a claim is found to be procedurally defaulted, a federal court may grant habeas relief on such claim only if the petitioner has "demonstrate[d] cause for the default and prejudice from the asserted error," House v. Bell, 547 U.S. 518, 536 (2006), or a "fundamental miscarriage of justice," see Murray v. Carrier, 477 U.S. 478, 496 (1986). Showing "cause" usually requires a demonstration of "some external impediment preventing counsel from constructing or raising the claim." Id. at 492. A miscarriage of justice claim requires a petitioner to make a showing of actual innocence. See Schlup v. Delo, 513 U.S. 298, 326-27, 326 n.44 (1995).

## II.  Application

### A.  Speedy Trial Claim

Petitioner first claims that the state court improperly denied his C.P.L. § 30.30 motions.  (Pet. at 5.) Specifically, petitioner argues that the "People failed to contest" his motions and that therefore his "motion[s] to dismiss should have been granted."[9]  (Id.)

The AEDPA permits federal habeas review of state court adjudications only where a "violation of the Constitution or laws or treaties of the United States" has occurred.  28 U.S.C. § 2254(a).  A federal habeas court may not grant habeas relief based on errors of state law made by a state court, because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (finding that it was improper for a federal court to base its conclusions on a finding that evidence was improperly admitted under state law).  Insofar as petitioner claims that his motions to dismiss pursuant to C.P.L. § 30.30 should have been granted, this claim is based on an

---

[9] In his brief to the Appellate Division, petitioner argued that the People's failure to submit any opposition to his motions to dismiss constituted a concession that over six months of delay between the filing of the felony complaint, on September 9, 2004, and the People's readiness for trial, was attributable to the People, thus violating C.P.L. § 30.30.  (See Pet'r App. Div. Br. at 16-18.)

issue of pure state law and does not present a cognizable claim on federal habeas review.

Construing petitioner's submissions liberally so as to raise a Sixth Amendment speedy trial claim,[10] see Triestman, 470 F.3d at 474, petitioner is also without relief.  In order to obtain habeas relief, the AEDPA requires that the petitioner have "exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  Petitioner never raised a Sixth Amendment speedy trial claim at his trial, on appeal to the Appellate Division, or in his letters to the New York Court of Appeals.  (See Pet'r App. Div. Br.; ECF No. 8-1, Ex. D, Pet'r Application for Leave to Appeal to the New York Court of Appeals, dated 02/08/10; Pet'r Letter to the New York Court of Appeals Supporting His Application for Leave, dated 03/08/10 (collectively, "Pet'r Ct. App. Lts.").)  Nor does petitioner's assertion of a C.P.L. § 30.30 claim constitute the "substantial equivalent," Picard, 404 U.S. at 278, of a Sixth Amendment speedy trial claim.  See Kirk v. Burge, 646 F. Supp. 2d 534, 543-44 (S.D.N.Y. 2009) ("Although [petitioner's] appellate brief raised a statutory speedy trial claim under New York State law, such a claim is insufficient to preserve a federal constitutional speedy trial claim."); Cadilla v. Johnson, 119

---

[10] A Sixth Amendment speedy trial claim would be cognizable on federal habeas review, because a Sixth Amendment violation is a "violation of the Constitution . . . of the United States."  28 U.S.C. § 2254(a).

F.Supp.2d 366, 374 (S.D.N.Y. 2000) ("Because C.P.L. § 30.30 is merely a state law provision requiring the prosecution to be ready for trial, a § 30.30 claim does not raise a federal constitutional claim.").

Furthermore, petitioner has not "fairly presented" the Sixth Amendment speedy trial claim to the state courts. See Daye, 696 F.2d at 194. None of the federal or state cases relied upon by petitioner in his submissions to the New York State courts employ Sixth Amendment speedy trial analysis, and petitioner never once referenced or alluded to his Sixth Amendment right to a speedy trial during the state proceedings. Neither did petitioner assert his C.P.L. § 30.30 claim "in terms so particular as to call to mind a specific right protected by the Constitution" nor allege "a pattern of facts that is well within the mainstream of constitutional litigation." Id. Petitioner, therefore, has not "fairly presented" a Sixth Amendment speedy trial claim to the New York State courts.

Because petitioner failed to present a Sixth Amendment speedy trial claim to the state courts, he has not "exhausted the remedies available in the courts of the State," as required under the AEDPA. 28 U.S.C. § 2254(b)(1)(A). Generally, if a federal habeas petition contains unexhausted claims, a federal court should dismiss the petition. See Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994). Nevertheless, when the petitioner

no longer has remedies available in the state courts, the court may deem the claims exhausted because any attempt to pursue the claims in state court would be fruitless. Id. at 828-29 ("It would thus be fruitless to require [petitioners] to pursue these claims in state court, and we deem the claims exhausted.").

"Petitioner was entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals," both of which he already pursued. Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001); see also Grey, 933 F.2d at 120. "Under New York law a petitioner may not obtain collateral review of any claims he could have raised on direct appeal, but did not." Walker v. Bennett, 262 F. Supp. 2d 25, 31 (W.D.N.Y. 2003); see also N.Y. C.P.L. § 440.10(2)(c); Aparicio, 269 F.3d at 91 ("New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal."). "Because [petitioner] raised a statutory speedy trial claim on direct appeal, there can be no question that he could have raised a federal speedy trial claim based on the Sixth Amendment as well; the factual grounds for both claims would be substantially the same and would not require the creation of an additional record to permit 'adequate review.'" Walker, 262 F. Supp. 2d at 31 (quoting C.P.L. § 440.10(2)(c)). Because of the procedural default under § 440.10(2)(c), any attempt by

petitioner to return to state court to exhaust this claim would be fruitless. Consequently, the court deems the Sixth Amendment speedy trial claim exhausted. See Bossett, 41 F.3d at 829.

"However, the same procedural default[] prevent[s] [the court] from addressing the merits of th[e] claim[]." Id. It is clear that "when the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, federal habeas courts also must deem the claims procedurally defaulted." Aparicio, 269 F.3d at 90 (internal quotation marks and citation omitted); see also Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011) (citing Aparicio). The Sixth Amendment speedy trial claim is, therefore, exhausted but procedurally defaulted.

Having concluded that the Sixth Amendment speedy trial claim is procedurally defaulted, the court must determine whether petitioner can overcome the procedural default. Here, petitioner has not shown cause for failing to assert a Sixth Amendment speedy trial claim, and nothing in the record indicates the existence of "some objective factor external to the defense [which] impeded counsel's efforts" to fairly present the claim to the New York State courts. Murray, 477 U.S. at 488. Nor does petitioner argue that he is actually innocent of

the crimes for which he was convicted, such that a fundamental miscarriage of justice would result if the court did not reach the merits of his claim.  See Schlup, 513 U.S. at 316; Murray, 477 U.S. at 496.

Therefore, petitioner's Sixth Amendment speedy trial claim is procedurally barred from federal habeas review, and his request for relief on this ground is denied.[11]

B.    Right to Counsel Claims

Petitioner asserts, in essence, two Sixth Amendment right to counsel claims.  (See Pet. at 5.)  First, petitioner contends that the trial court improperly denied his request for reassignment of counsel or, alternatively, for an adjournment of the trial in order to allow petitioner to retain new counsel. (See id.)  Second, petitioner argues that the trial court improperly permitted petitioner to waive his Sixth Amendment right to counsel and proceed *pro se*.  (See id.)  These claims were presented to the Appellate Division and to the New York Court of Appeals, and were thus properly exhausted.[12]  (See Pet'r

---

[11] Because the court finds that petitioner's speedy trial claim is procedurally defaulted based on the aforementioned grounds, it is unnecessary to address respondent's argument that this claim is barred by an adequate and independent state law ground.

[12] Respondent concedes that petitioner's right to counsel claims have been properly exhausted.  (See Resp't Opp'n at 10-11.)

App. Div. Br. at 19; 03/08/10 Pet'r Ct. App. Ltr. at 1-3.)[13]  The
court addresses each right to counsel claim separately.

### 1.   Reassignment of Counsel Claim

The Supreme Court of the United States has stated
that, for purposes of Sixth Amendment analysis, "the appropriate
inquiry focuses on the adversarial process, not on the accused's
relationship with his lawyer as such."  United States v. Cronic,
466 U.S. 648, 657 n.21 (1984).  "Thus, while the right to select
and be represented by one's preferred attorney is comprehended
by the Sixth Amendment, the essential aim of the Amendment is to
guarantee an effective advocate for each criminal defendant
rather than to ensure that a defendant will inexorably be
represented by the lawyer whom he prefers."  Wheat v. United
States, 486 U.S. 153, 159 (1988); see also Pizarro v. Bartlett,
776 F. Supp. 815, 818 (S.D.N.Y. 1991) ("Nor does the Sixth
Amendment guarantee that the defendant will be represented by
the lawyer of his choice.").  "A court need go no further than
ensuring that each defendant has an 'effective advocate.'"  Id.
(quoting Wheat, 486 U.S. at 160).

The Second Circuit has further limited a defendant's
right to reject assigned counsel on the eve of trial.  "It is
settled in this Circuit that '[o]nce trial has begun a defendant

---

[13] This citation refers only to petitioner's letter to the New York Court of
Appeals dated 03/08/10.

does not have the unbridled right to reject assigned counsel and demand another.'" McKee v. Harris, 649 F.2d 927, 931 (2d Cir. 1981) (alteration in original) (quoting United States v. Calabro, 467 F.2d 973, 986 (2d Cir. 1972)). "An accused's right to select his own counsel . . . cannot be insisted upon or manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." United States v. Bentvena, 319 F.2d 916, 936 (2d Cir. 1963). "A defendant with assigned counsel cannot decide for no good cause on the eve or in the middle of trial that he will have another attorney represent him." Calabro, 467 F.2d at 986. To warrant reassignment of counsel on the eve of trial or once it has begun, "the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." Id.

In assessing good cause, loss of trust is a factor to be considered, but "a defendant seeking substitution of assigned counsel must nevertheless afford the court with legitimate reasons for the lack of confidence." McKee, 649 F.2d at 932. "[W]hen, for the first time, an accused makes known to the court in some way that he has a complaint about his counsel, the court must rule on the matter. If the reasons are made known to the court, the court may rule without more. If no reasons are

stated, the court then has a duty to inquire into the basis for the client's objection to counsel and should withhold a ruling until reasons are made known." Id. at 934. "If a court refuses to inquire into a seemingly substantial complaint about counsel when he has no reason to suspect the bona fides of the defendant, or if on discovering justifiable dissatisfaction a court refuses to replace the attorney, the defendant may then properly claim denial of his Sixth Amendment right." Calabro, 467 F.2d at 986.

The Second Circuit reviews "[a] district court's denial of a motion to substitute counsel . . . for abuse of discretion." United States v. Simpson, 227 F. App'x 41, 42 (2d Cir. 2007); see also United States v. John Doe No. 1, 272 F.3d 116, 122 (2d Cir. 2001). The Second Circuit considers four factors in determining whether the trial court abused its discretion: "(1) the timeliness of the defendant's motion requesting new counsel; (2) the adequacy of the trial court's inquiry into the matter; (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense; and (4) the extent to which the defendant's own conduct contributed to the communication breakdown." Simpson, 2007 WL 1109285, at *1 (internal quotation marks omitted). The court finds these factors instructive in determining whether the state courts'

adjudication of petitioner's instant Sixth Amendment claim was a reasonable application of an established constitutional right.

Here, petitioner's request for reassignment of counsel was made on the first day of trial, just before the jury panel was to enter the courtroom. (See 05/29/07 Tr. at 13.) As the trial court noted, petitioner could have requested that "Tameeca Allison" be substituted as his counsel of choice the week prior to trial. (See id.) Moreover, because the court denied petitioner's January 19, 2007 motion for reassignment of counsel on February 22, 2007 — more than three months before the start of trial — the Appellate Division correctly concluded that petitioner "had ample opportunity to retain counsel of his own choosing before his request" made at the beginning of jury selection. Allison, 892 N.Y.S.2d at 518. Therefore, it was not unreasonable for the trial court and the Appellate Division to conclude that petitioner's request for reassignment of counsel was not timely made.

In addition, the trial court did not violate its duty to inquire into petitioner's reasons for requesting a reassignment of counsel, and the Appellate Division finding that the inquiry was sufficient was reasonable.[14]  Prior to 2007, the

---

[14] Petitioner, in his brief to the Appellate Division, argued that the trial court refused to inquire into the reasons for his dissatisfaction with assigned counsel and thus violated its "ongoing duty to determine anew whether there was good cause to grant [petitioner's] new request for reassignment of counsel."  (Pet'r App. Div. Br. at 21.)

trial court had already granted petitioner two requests for
appointment of new counsel.  (See Resp't Opp'n at 30.)  On
January 19, 2007,[15] petitioner made a third motion for
reassignment of counsel, alleging that Worgan had failed to
visit him in jail, inform him of pertinent motions, conduct an
investigation, and make bail applications.  (See ECF No. 11-1,
Petitioner's Motion for Reassignment of Counsel, dated 01/19/07
("Pet'r Third Mot. for Reassignment of Counsel") at 2, 4;[16] see
also Pet'r App. Div. Br. at 21.)  The trial court denied this
motion on February 22, 2007,[17] finding that petitioner failed to
establish "any good reason for [] Worgan to be relieved."  (See
ECF No. 11-2, Calendar Call Minutes, dated 02/22/07 ("CC.") at
4.)  The court noted that petitioner's third motion for
reassignment of counsel consisted of the same "boilerplate
motion and allegations" used by petitioner in his previous two
motions.  (Id.)  The court also found the allegations to be
"frivolous" and a "dilatory tactic," noting that Worgan had

---

[15] In his brief to the Appellate Division, petitioner indicated that this
reassignment of counsel motion was made on April 27, 2007.  (Pet'r App.
Br. at 21.)  The record, however, reflects that the motion was filed on
January 19, 2007.  (See Pet'r Third Mot. for Reassignment of Counsel at 2.)

[16] As Petitioner's Third Motion for Reassignment of Counsel is not paginated,
the court refers to the page numbers assigned by the Electronic Court Filing
System ("ECF").

[17] Respondent noted that the minutes of the calendar call, which took place on
February 22, 2007, incorrectly refer to the proceedings on that date as
having taken place on June 22, 2007, several weeks after petitioner's trial.
(See ECF No. 11, Respondent's Letter to Court Responding to Additional
Information Request, dated 07/05/11.)

appeared and made motions on petitioner's behalf and was ready

to begin trial. (Id. at 4, 5.)[18]

At the time petitioner made a new request for

reassignment of counsel on May 29, 2007,[19] on the first day of

trial, the court initially denied petitioner's motion without

inquiring into the reasons for petitioner's dissatisfaction with

Worgan, stating that it had already heard a "whole bunch of

applications." (05/29/07 Tr. at 13-14.) Once petitioner

insisted, however, the court then engaged petitioner in a

dialogue, during which petitioner repeatedly expressed a lack of

faith in Worgan's commitment to his defense. (Id. at 16, 20.)

Petitioner, however, gave no specific reasons, other than a lack

of confidence in Worgan, for his dissatisfaction.

The trial court's duty to inquire into a defendant's

reasons for requesting a reassignment of counsel is prompted

---

[18] In response to this court's request for additional information concerning
petitioner's January 19, 2007 motion for reassignment of counsel, petitioner
submitted a letter to this court alleging that, aside from opposing his
petition for a writ of habeas corpus, neither the Queens County District
Attorney's Office nor the Queens County Clerk's Office "ever filed any
opposition paperwork to any of [his] motions." (ECF No. 12, Petitioner's
Letter to the Court, dated 07/18/11 at 2.) Petitioner also contends that
"the court records and minutes are in fact accurate," but that "the
assit[ant] A.G. has changed the wording of the record on several occassions."
(Id. at 3.) Furthermore, petitioner claims that his § 30.30 motion was never
ruled on by the trial court and that he "never elected to withdraw [his]
plea." (Id. at 4.) Because the record does not support petitioner's
allegations contained in this letter and because petitioner's claims are
otherwise disposed of, the court finds that petitioner's most recent
contentions are without merit.

[19] Worgan first indicated to the court that petitioner wanted his "cousin,"
Tameeca Allison, to represent him. (05/29/07 Tr. at 13.) Petitioner then
stated that he did not want to be represented by Worgan. (Id.)

only where a defendant makes a "seemingly substantial" complaint.  See Calabro, 467 F.2d at 986.  On May 29, 2007, the only complaints about Worgan concerned petitioner's own subjective assessment of Worgan's commitment and petitioner's lack of confidence in Worgan's dedication to his case. (05/29/07 Tr. at 16, 20.)  Such a loss of trust or confidence does not rise to the level of good cause and, without more, is insufficient to constitute a "seemingly substantial" complaint. See McKee, 649 F.2d at 931-33 (defendant's loss of trust in counsel, triggered by defendant's incorrect belief that his attorney had discussed the fact of defendant's guilt with the prosecutor, was insufficient to constitute good cause); see also United States v. Perez, 904 F.2d 142, 151 (2d Cir. 1990) (no hearing required where defendant's only complaint was that his attorney "says everything all backwards"); McCallie v. Poole, No. 07-CV-0473, 2011 WL 1672063, at *12 (W.D.N.Y. May 3, 2011) (no hearing required where defendant's complaints about counsel centered on an allegation that defense counsel was in collusion with the prosecutor).  Consequently, the trial court did not violate its duty to inquire into the reasons for petitioner's dissatisfaction with counsel, and it was reasonable for the Appellate Division to conclude that the trial court "conducted a sufficient inquiry regarding the basis of the defendant's request and no further inquiry was required, as the defendant's

assertions did not suggest the serious possibility of a genuine conflict of interest or other impediment to the defendant's representation by assigned counsel."  <u>Allison</u>, 892 N.Y.S.2d at 518.

Moreover, no inquiry is necessary "[i]f the reasons [for petitioner's dissatisfaction with counsel] are made known to the court."  <u>McKee</u>, 649 F.2d at 934.  In his January 19, 2007 motion for reassignment of counsel, petitioner cited four reasons for his dissatisfaction with Worgan (<u>see</u> Pet'r Third Mot. for Reassignment of Counsel at 4), which the trial court considered and rejected, finding that petitioner had not demonstrated good cause.  (<u>See</u> CC. at 4-5.)  On May 29, 2007, petitioner voiced no new complaints, and merely stated that he had lost faith in Worgan's commitment to his case.  (05/29/07 Tr. at 16, 20.)  Petitioner, just like the petitioner in <u>McKee</u>, "had no difficulty making his views known, at times to the exclusion of adhering to the court's directions."  <u>McKee</u>, 649 F.2d at 933 (internal quotation marks and citation omitted). Given these facts, it was also reasonable to conclude that, on May 29, 2007, petitioner was merely renewing his January 19, 2007 motion for reassignment of counsel and that therefore the reasons for his dissatisfaction with counsel were already known to the court.

Nor was it unreasonable for the trial court to conclude that no good cause existed to warrant reassignment of counsel. In assessing good cause for a motion for reassignment of counsel made on the eve of trial, courts generally consider whether there existed (1) a conflict of interest between client and attorney, (2) a complete breakdown in communication, or (3) an irreconcilable conflict which leads to an apparently unjust verdict. See McKee, 649 F.2d at 931 (quoting Calabro, 467 F.2d at 986). None of these circumstances were present in the instant case.

Nothing in the record suggested the existence of a conflict of interest between petitioner and Worgan, or of an irreconcilable conflict resulting in an unjust verdict. Further, the trial court was not unreasonable in determining that, although petitioner complained about the lack of communication with his counsel, there was no complete breakdown in communication. Petitioner complained that Worgan failed to visit him in jail, communicate with him or with his family, and respond to his letters. (05/31/07 Tr. at 210-11.) Petitioner admitted, however, that he did have the opportunity to see Worgan in court on May 14, 2007. (05/31/07 Tr. at 210-11). The court also notes that petitioner had the opportunity to see Worgan in court on March 10, 2006 (Mapp/Wade/Huntley/Dunaway hearing), (see 03/10/06 Tr. at 1-6; see also 02/22/07 Tr. at 4),

30

March 30, 2006, (see 03/30/06 Tr. at 1-85), April 4, 2006 (see 04/04/06 Tr. at 1-6), December 5, 2006 (petitioner's plea), (see 12/05/06 Tr. at 1-19), January 23, 2007 (petitioner's plea withdrawal), (see 01/23/07 Tr. at 1-5), February 22, 2007 (court's ruling on petitioner's *pro se* preliminary motions), (see 02/22/07 Tr. at 1-7), and May 23, 2007 (Sandoval hearing) (see 05/23/07 Tr. at 1-9).

Moreover, the trial court noted that the record demonstrated that Worgan had appeared for the petitioner and made motions on his behalf, including a suppression motion. (05/29/07 Tr. at 16; CC. at 4 (". . . Worgan, participated in the suppression hearing on defendant's behalf. And in addition he has participated in countless . . . .").) Specifically, the court noted that Worgan had "demonstrated his confidence in the past, . . . handled the hearing in [petitioner's] case and handled whatever he had to handle thus far," and that "the records demonstrate[d]" that Worgan "had been representing [petitioner] throughout," and thus the court "ha[d] no reason to go along with [the] request" by petitioner to reassign counsel. (05/29/07 Tr. at 16.) The trial court's conclusion was not unreasonable, given that the facts do not demonstrate a complete breakdown in communication.

Furthermore, even greater breakdowns in communication have been found by courts in this circuit not to amount to good

cause.  See Shorter v. Corcoran, No. 05-CV-0417T, 2009 WL
3165608, at *4-6 (W.D.N.Y. Sept. 28, 2009) (complete breakdown
in communication not established despite attorney's failure to
visit defendant in jail); Carpenter v. Conway, No. 07-CV-3602,
2011 WL 795860, at *6 (E.D.N.Y. Feb. 25, 2011) (no complete
breakdown in communication where attorney visited petitioner
only twice); Greene v. Brown, No. 06 Civ. 5532, 2007 WL 1589449,
at *16 (S.D.N.Y. June 4, 2007) (Report and Recommendation) (good
cause not shown where petitioner expressed a lack of confidence
in assigned counsel and indicated that petitioner had not "had a
chance to speak to [his] attorney for more than five months"),
adopted, No. 06 Civ. 5532, 2010 WL 1541429 (S.D.N.Y. Apr. 15,
2010); Pizarro, 776 F. Supp. at 820 (good cause could not be
established where petitioner claimed that attorney failed to
visit him at his place of confinement, submit motions, or
prepare for his defense, since the record demonstrated that
defendant's attorney made several motions and appeared on his
client's behalf).  Thus, the trial court was reasonable in
finding that Worgan and petitioner had not experienced a
complete breakdown in communication.

Lastly, as noted above, petitioner's assertions that
he had lost confidence in Worgan were insufficient to constitute
good cause.  See McKee, 649 F.2d at 932 ("[A] purely subjective
standard would convert the requirement of good cause into an

empty formality."); <u>Nelson v. Brown</u>, No. 07 Civ. 3568, 2009 WL

6340020, at *14 (S.D.N.Y. July 1, 2009) (Report and

Recommendation) (finding that a petitioner's complaint against

his or her attorney at trial, alone, is not sufficient to create

a conflict between attorney and client that would constitute

good cause), <u>adopted</u>, No. 07 CIV. 3568, 2010 WL 1459187

(S.D.N.Y. Apr 12, 2010).  Consequently, the trial court and

Appellate Division properly found that no good cause existed

requiring reassignment of counsel and the denial of petitioner's

third motion for reassignment was not unreasonable.[20]

Nor was the denial of an adjournment of the trial to

retain new counsel unreasonable.  See <u>Persad v. Conway</u>, No. 05-

CV-4199, 2008 WL 268812, at *9 (E.D.N.Y. Jan. 30, 2008) (habeas

relief denied where trial court refused to grant petitioner's

request for an adjournment — made just before the jury panel

entered the courtroom — to retain private counsel, even though

petitioner's family had already contacted and begun raising

funds to retain private attorney and private attorney had

represented petitioner on prior occasions).  Here, the trial

court noted that petitioner had been "given every opportunity"

to find another attorney and that "[t]his case has been ready

for the longest time."  (05/31/07 Tr. at 206-07.)  Similarly,

---

[20] Because the court finds no complete breakdown in communication, the court
need not consider whether petitioner contributed to the breakdown in
communication.

the Appellate Division found that petitioner "had ample opportunity to retain counsel of his own choosing before his request, and he failed to demonstrate that the requested adjournment was necessitated by forces beyond his control and was not a dilatory tactic." Allison, 892 N.Y.S.2d at 518. Moreover, the record is devoid of any evidence that petitioner or his family attempted to retain new counsel in a timely manner. In fact, petitioner admitted that he found "Tameeca Allison," whom petitioner requested be substituted as his counsel on May 29, 2007, from an attorney directory, and that he did not know the location of her office. (05/31/07 Tr. at 208.) In light of the foregoing, and petitioner's failure to demonstrate good cause, as outlined above, the denial of an adjournment of the trial to find new counsel was not unreasonable. See Persad, 2008 WL 268812, at *9.

The state courts' adjudication was not "contrary to, or involve[] an unreasonable application of, clearly established Federal law," nor was it "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). Consequently, petitioner's request for habeas relief on the ground that the state courts violated his Sixth Amendment right to counsel by denying his request for reassignment of counsel, or for an adjournment of the trial to find new counsel, is denied.

*2.  Waiver of Right to Counsel*

Petitioner next contends that his waiver of his right to counsel, and his decision to proceed *pro se*, was not voluntary, intelligent and knowing.  "To be effective, a waiver [of the right to counsel] must be knowing, intelligent and voluntary a [sic] choice 'made with eyes open.'"  McKee, 649 F.2d at 930 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942)).  "[I]n order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits."  Faretta v. California, 422 U.S. 806, 835 (1975).  "The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."  Johnson v. Zerbst, 304 U.S. 458, 464 (1938).

In his brief to the Appellate Division, petitioner argued that his waiver of his Sixth Amendment right to counsel was not voluntary because the trial court forced him to choose between proceeding with assigned counsel or representing himself.  (See Pet'r Appellate Div. Br. at 22.)  Further, petitioner argued that his waiver was not knowingly and intelligently made because the trial court made an insufficient inquiry in determining whether petitioner understood his

actions, his choices, and the risks of proceeding *pro se*. (See id. at 22-28.)

Because petitioner failed to show good cause for requesting a reassignment of counsel, his Sixth Amendment rights were not offended by the options put forth to him by the trial court. The court stated that it would permit petitioner to retain private counsel if petitioner had an attorney "ready, willing and able" to commence the trial immediately. (05/31/07 Tr. at 204.) Having no such attorney available, the trial court then limited petitioner's options to proceeding with appointed counsel or representing himself. (Id. at 208.) Presenting petitioner with this choice was not improper, because "[a] criminal defendant may be asked, in the interest of orderly procedures, to choose between waiver and another course of action as long as the choice presented to him is not constitutionally offensive." McKee, 649 F.2d at 931 (quoting Maynard v. Meachum, 545 F.2d 273, 278 (1st Cir. 1976)) (finding a choice between proceeding with assigned counsel, self-representation, or retaining a private attorney to be constitutionally permissible). The fact "[t]hat petitioner did not particularly like the choice presented to him and that he did not want to proceed *pro se* are not sufficient reasons to render the choice constitutionally offensive." McKee, 649 F.2d at 931 (quoting Wilks v. Israel, 627 F.2d 32, 36 (7th Cir.

1980)).  Therefore, petitioner's waiver of his right to counsel was voluntarily made.

In order for a waiver to be valid, it must also be made knowingly and intelligently.  "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" Faretta, 422 U.S. at 835 (quoting Adams, 317 U.S. at 279). Factors to be considered by the trial court are "'whether the defendant understood that he had a choice between proceeding *pro se* and with assigned counsel, whether the defendant understood the advantages of having one trained in the law to represent him, and whether the defendant had the capacity to make an intelligent choice.'"  United States v. Hurtado, 47 F.3d 577, 583 (2d Cir. 1995) (quoting Calabro, 467 F.2d at 985).  The trial court, however, is not required to follow any "particular talismanic procedures" in making its inquiry.  Hurtado, 47 F.3d at 583 (quotation marks omitted).

Here, it is clear from the record that the trial court informed petitioner on numerous occasions that he had a choice between proceeding with assigned counsel or representing himself.  (See, e.g., 05/29/07 Tr. at 16-17, 18-19, 21 ("Of

course, if you don't want [Worgan] to represent you, you will have to represent yourself. . . . Either [] Worgan represents you or he doesn't represent you. . . . If you did not want [Worgan], your only other choice is going pro se."); 05/31/07 Tr. at 208, 215 ("[W]e are not doing anything other than it's [] Worgan or you represent yourself. . . . [D]o you still wish to proceed without the benefit of an attorney?").)   Petitioner, therefore, cannot reasonably argue that he did not realize he had a choice between self-representation and proceeding with assigned counsel.

Petitioner was also aware of the benefits of having a trained attorney assist in his representation and the risks of proceeding without counsel.  When asked by the court if he was asking to proceed *pro se*, petitioner replied: "No, I'm not.  I'm asking to proceed without the benefit of counsel Worgan representing me, sir."  (05/29/07 Tr. at 18.)  Petitioner explained that he "would like to go to trial with an attorney [he] feel[s] comfortable with, with an attorney that will represent [him] in [his] best interest, with an attorney who will fight for [him] . . . someone that will represent [him] to make sure [he] ha[s] a fair shot" at trial. (Id. at 20.)  The court explained that Worgan was an experienced attorney who was "familiar with all the rules that apply and the rules of evidence."  (05/31/07 Tr. at 212-13.)  Petitioner noted his

understanding, acknowledging that Worgan "may be an excellent lawyer" and stating that he did not "doubt [the court] one bit," but that petitioner still had no confidence in Worgan.  (Id. at 211, 213.)  It is clear, therefore, that petitioner understood the benefits of being represented by an attorney, yet chose to forgo those benefits and proceed *pro se*.

The record also reflects that petitioner was capable of making an intelligent choice as to whether to proceed *pro se*. Petitioner was articulate and demonstrated at least a basic understanding of the proceedings and of his legal rights.  (See, e.g., id. at 204-06.)  In addition, petitioner had prior experience with the criminal justice system, both through his previous convictions and in his past employment as a counselor. (See 05/29/07 Tr. at 17-18; 05/31/07 Tr. at 209-10.)  The trial court also inquired into petitioner's age and occupation, and was satisfied that petitioner was capable of making a valid waiver of his rights.  (See 05/31/07 Tr. at 209-22.)  Nothing in the record suggests that petitioner was incapable of intelligently waiving his right to counsel.

Finally, petitioner's waiver was, as the Appellate Division found, "clear and unequivocal."  Allison, 892 N.Y.S.2d at 518.  The court repeatedly emphasized the disadvantages of self-representation and encouraged petitioner to proceed with assigned counsel.  (See, e.g., 05/31/07 Tr. at 209 ("[H]ave you

ever heard of the expression, 'A person who represents himself has a fool for a client?'").) The court stressed to petitioner the seriousness of the charges and the fact that "if [he] [we]re convicted . . ., [he] may qualify for a sentence that involves a life sentence." (Id. at 212.) Petitioner responded: "I know this is a serious matter and I know what's at stake here." (Id.) The court also warned petitioner that "[t]his trial will be conducted in accordance with the rules of evidence," that the court would not help petitioner ask questions or make objections, and that the rules and procedures of the court "may be confusing to someone who has not had any legal training." (Id. at 214-15.) Despite the court's repeated warnings, petitioner unequivocally expressed his desire to proceed *pro se*. (See id.)

Thus, the Appellate Division's determination that the trial court "did not err in allowing the defendant to represent himself during part of the trial," Allison, 892 N.Y.S.2d at 518, was not "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Petitioner voluntarily "relinquished his right to court-appointed counsel with full understanding of the penalties he faced and the pitfalls of self-representation." McKee, 649 F.2d at 930. Consequently, petitioner's request for habeas relief on

the ground that his waiver of his Sixth Amendment right to counsel was not voluntary, knowing and intelligent is denied.

## C.  Excessive Sentence Claim

Lastly, petitioner claims that his sentences, to be served consecutively and totaling nine to eighteen years imprisonment, were excessive in light of his age, history of drug addiction, and the fact that no weapon was used during the commission of his crimes and no one was physically injured. (See Pet. at 6.)

Petitioner did not argue to the Appellate Division, nor does he explicitly argue here, that his sentence violates the Eighth Amendment.  Rather, petitioner asked the Appellate Division to "exercise its discretion" to reduce the trial court's sentence or modify the sentence to run all terms concurrently, as opposed to consecutively.  (Pet'r App. Div. Br. at 31.)  Pursuant to New York law, the Appellate Division may modify a criminal sentence upon a determination that the sentence is "illegal or unduly harsh or severe," or if, "as a matter of discretion in the interest of justice," the sentence, although legal, is "unduly harsh or severe."  N.Y. C.P.L. §§ 470.15(2)(c), 470.15(6)(b).  Insofar as petitioner raises those same arguments in the instant habeas petition, the claim would not be cognizable on federal habeas review, as it would require this court to evaluate the refusal of the Appellate

41

Division to exercise its discretion in conformance with New York State law. See Garcia v. Artus, No. 08-CV-1423, 2010 WL 1816333, at *14 (E.D.N.Y. May 5, 2010) ("As a threshold matter, to the extent that petitioner relies on state law as a grounds for an excessive sentence claim, such a claim is not cognizable on habeas review." (footnote omitted)); Edwards v. Marshall, 589 F. Supp. 2d 276, 290 (S.D.N.Y. 2008) (petitioner's argument, in reliance on "state-law principles," that sentence should be reduced "in the interest of justice" is not cognizable on federal habeas review); see also Estelle v. McGuire, 502 U.S. at 67-68.

Construing petitioner's excessive sentence claim liberally to raise an Eighth Amendment challenge, Triestman, 470 F.3d at 474, the court finds that such claim is unexhausted. Petitioner never argued to the Appellate Division or to the New York Court of Appeals that his sentence violated the Eighth Amendment. (See Pet'r App. Div. Br.; Pet'r Ct. App. Lts..) Rather, petitioner asked the Appellate Division to "exercise its discretion" to reduce or modify his sentence. (Pet'r App. Div. Br. at 31.) This state law claim requesting a discretionary modification of a sentence is not the "substantial equivalent" of an Eighth Amendment claim. The request to the Appellate Division to exercise its discretion to reduce his sentence did not require a finding that the sentence in question violates the

Eighth Amendment, or even an analysis of the constitutionality of the sentence on Eighth Amendment grounds.

Nor can it be said that the Eighth Amendment claim was "fairly presented" to the state courts. None of the cases cited by petitioner in his brief to the Appellate Division or in his letters to the New York Court of Appeals employ Eighth Amendment analysis sufficient to "alert the [state] court to the claim's federal nature."[21] Daye, 696 F.2d at 192. (See Pet'r App. Div. Br.; Pet'r Ct. App. Lts..) Neither does asking the Appellate Court to "exercise its discretion" to reduce or modify petitioner's sentence pursuant to state law constitute the "assertion of [a] claim in terms so particular as to call to mind a specific right protected by the Constitution" or an "allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Daye, 696 F.2d at 194; see Merejildo v. Breslin, No. 05 Civ. 3111, 2009 WL 2151835, at *11 (S.D.N.Y. July 16, 2009) (petitioner's request to the Appellate Division to reduce or modify his "excessive"

---

[21] Although some of the cases cited by petitioner in his brief to the Appellate Division make passing reference to the Eighth Amendment, (see Pet'r App. Div. Br. at 29 (citing People v. Notey, 423 N.Y.S.2d 947 (N.Y. App. Div. 1980) ("[A]lways in the background of the sentencing process are the requirements of the Eighth Amendment."))), none employ Eighth Amendment analysis. See Acosta v. Giambruno, 326 F. Supp. 2d 513, 521 n.3 (S.D.N.Y. 2004) ("While it is conceivable that some of the cases [petitioner] relied upon may cite decisions grounded on federal constitutional principles, the Court finds that under the factors set forth in Daye, [petitioner] has not presented his excessive sentence claim in federal constitutional terms so as to afford the state court a fair opportunity to rule on it.").

sentence, without referring to the Eighth Amendment or pertinent
language suggesting a constitutional claim, found insufficient
for exhaustion purposes); Edwards, 589 F. Supp. 2d at 290 ("[A]
prisoner's reliance on a state procedural law granting courts
discretionary authority to reduce sentences does not 'fairly
present' a federal constitutional

claim in state court.").[22]

Even if it had been exhausted, petitioner's Eighth
Amendment claim is without merit. "Absent specific authority,
it is not the role of an appellate court to substitute its
judgment for that of the sentencing court as to the
appropriateness of a particular sentence." Solem v. Helm, 463
U.S. 277, 290 n.16 (1983). "'[A] reviewing court rarely will be
required to engage in extended analysis to determine that a
sentence is not constitutionally disproportionate' because 'the

---

[22] As noted in the above discussion of petitioner's speedy trial claim,
petitioner has already had his one appeal as of right to the Appellate
Division and his one request for leave to appeal to the New York Court of
Appeals. See Aparicio, 269 F.3d at 91. It is likely that petitioner's
Eighth Amendment claim would also be procedurally barred from collateral
attack under C.P.L. § 440.10(2)(c), where the petitioner could have but did
not raise the claim in question on direct appeal, and "[w]hether a claim
could have been raised on direct appeal depends . . . on the adequacy of the
record with regard to that claim at the time of the appeal." Walker, 262 F.
Supp. 2d at 31. Petitioner argued to the Appellate Division that mitigating
factors counsel in favor of a reduction or modification of his sentence, and
thus it is likely that the record was sufficiently developed with regard to
an Eighth Amendment claim at the time of appeal. Therefore, petitioner's
Eighth Amendment claim is procedurally defaulted. As is the case with
petitioner's speedy trial claim, petitioner has made no showing of cause and
prejudice, nor has petitioner alleged that a fundamental miscarriage of
justice would result because he is actually innocent of the crimes for which
he was convicted.

decision of a sentencing [court] is entitled to substantial deference.'" Edwards, 589 F. Supp. 2d. at 290 (quoting United States v. Persico, 853 F.2d 134, 138 (2d Cir. 1988)). The Supreme Court has stated that "[a] gross disproportionality principle is applicable to sentences for terms of years," but it would be the "exceedingly rare" and "extreme" case which would involve a sentence which is "contrary to" or an "unreasonable application of" this principle. Lockyer v. Andrade, 538 U.S. 63, 72, 73 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment)); 28 U.S.C. § 2254(d)(1).

Here, the sentence imposed by the trial court and subsequently affirmed by the Appellate Division "does not remotely approach the realm of grossly disproportionate punishments." Edwards, 589 F. Supp. 2d at 291 n.11; see Lockyer, 538 U.S. at 67-68, 77 (finding that, under California's Three Strikes law, a sentence of two consecutive terms of twenty-five years to life imprisonment for two counts of petty theft did not warrant relief under the AEDPA); Rummel v. Estelle, 445 U.S. 263, 285 (1980) (mandatory life sentence imposed under Texas statute upon defendant's third felony conviction, which was for obtaining $120.75 by false pretenses, did not constitute cruel and unusual punishment). In fact, the trial court declined to sentence petitioner as a persistent

felony offender, which would have allowed for a potential life sentence, (see 05/31/07 Tr. at 212), and, instead, sentenced petitioner as a second felony offender.[23]  (S. Tr. at 6-8.) Petitioner argues that his age, drug addiction, and the lack of a weapon or occurrence of physical injury makes his sentence excessive.  (Pet. at 6.)  The trial court, however, was well aware of these factors and took them into consideration when it issued its sentence.  (See S. Tr. at 4, 13-14 (the trial court acknowledged that "drug addiction has been a problem in the [petitioner's] life").)

Consequently, the sentence of nine to eighteen years imprisonment imposed by the trial court and affirmed by the Appellate Division was not "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Habeas relief on the ground that his sentence violates the Eighth Amendment is also denied.[24]

---

[23] The trial court found petitioner to be a second felony offender based on his 1992 conviction of criminal sale of a controlled substance in the third degree, for which petitioner was sentenced to a term of incarceration of six to twelve years.  (S. Tr. 7-8.)

[24] Because the court deems petitioner's Sixth and Eighth Amendment claims to be exhausted but procedurally defaulted, this petition is not considered a mixed petition.  See Herington v. Poole, No. 06-CV-6079, at *3 (W.D.N.Y. Mar. 5, 2007).  Thus, the court need not dismiss those claims to allow petitioner an opportunity to return to state court to properly exhaust the claims.

## CONCLUSION

Based on the foregoing, the court denies petitioner's application for a writ of habeas corpus. Because petitioner has not made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the court will not issue a certificate of appealability. See Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)) (discussing the standard for issuing a certificate of appealability). The court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this judgment denying the petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962).

Respondent shall serve a copy of this Memorandum and Order on petitioner and file a Certificate of Service on the electronic docket by August 2, 2011. The Clerk of Court is respectfully requested to enter judgment in accordance with this Memorandum and Order and to close the case.

**SO ORDERED.**

Dated:     August 1, 2011
           Brooklyn, New York

                                    _____/s/_____
                                    **KIYO A. MATSUMOTO**
                                    United States District Judge
                                    Eastern District of New York